UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>MAURICE T. JONES,<br><br>    Defendant. | **FILED UNDER SEAL**<br><br>Case No. 21-20055-HLT |

**MEMORANDUM AND ORDER**

The indictment in this case charges defendant Maurice T. Jones ("Jones") with possession with intent to distribute cocaine; use, carry, and possess a firearm in furtherance of that drug trafficking crime; and felon in possession of firearm and ammunition—all arising from a traffic stop in the earning morning hours of November 27, 2017. The court previously granted Jones' ex parte Motion for Production pursuant to Federal Rule of Criminal Procedure 17(c) and ordered the Lenexa Police Department to produce certain documents relating to Officer DeLoux. (ECF 11, 14.) This matter now comes before the court on Non-Party City of Lenexa's Motion to Partially Quash Subpoena—specifically, Item Nos. 1 and 2 of the 11-category subpoena. (ECF 22.) For the reasons explained below, the City of Lenexa's motion is granted.

**I.  BACKGROUND**

Jones's motion for the subpoena at issue explained that then-Lenexa Police Officer Matthew DeLoux ("DeLoux") pulled over Jones near West 77th Terrace and Quivira Road in Lenexa, Kansas, in the early morning hours of November 27, 2017. (ECF 11, at 3-4.) DeLoux was traveling north on Quivira Road, accelerated to catch up with Jones's vehicle as it turned left

from Quivira onto West 77th Terrace, and followed Jones into an apartment parking lot where DeLoux switched on his emergency lights. DeLoux told Jones he pulled him over because Jones had a cover over his license plate. But, according to Jones, this would violate a Lenexa ordinance only if the cover made the plate unreadable from 50 feet away, and DeLoux's dash camera footage showed that he was not within 50 feet of Jones's vehicle until after DeLoux followed Jones onto West 77th Terrace—*i.e.*, *after* DeLoux accelerated to catch up with Jones's vehicle. (*Id.*)

The motion pointed out that DeLoux is Caucasian and Jones is African-American. (*Id.* at 4-5.) Because of this, the subpoena sought a variety of records to determine whether an Equal Protection violation occurred. These included documents relating to DeLoux's experience with traffic stops, run sheets, incident reports, and dispatch records; complaints, disciplinary records, and Internal Affairs documents to determine whether DeLoux "has been accused of racially biased policing and/or dishonesty": and "training records regarding biased based policing to determine whether [DeLoux] followed his training during the traffic stop and search of the vehicle Mr. Jones was driving." (*Id.* at 4-6.) The court granted the motion and ordered the clerk to issue a subpoena to the Lenexa Police Department Records Custodian to produce 11 categories of documents.

The City of Lenexa ("the City") did not lodge any objection to Item Nos. 3-11 of this subpoena or to the companion subpoena issued to the City's records custodian seeking video footage from traffic cameras. (ECF 13 & 23, at 6.) However, the City asked Jones to narrow the following two categories:

> 1. Any and all police reports of traffic stops conducted by Officer Matthew DeLoux, badge number 1401, during his entire time of employment.
> 2. Any and all run sheets, incident reports, or dispatch records of traffic stops conducted by Officer Matthew DeLoux, badge number 1401, during his entire time of employment.

2

(ECF 22-1, at 3.)   The City contends that these categories are unreasonable and oppressive, and should not be allowed.   In response, Jones refused to narrow these categories.   (ECF 22, at 2 ("defense counsel is unwilling to narrow the requests in any way"), 23, at 4-5.)   Therefore, the City now moves to quash the subpoena with respect to Item Nos. 1 and 2.

## II.   LEGAL STANDARD

The court may quash a document subpoena in a criminal case if "compliance would be unreasonable or oppressive."   FED. R. CIV. P. 17(c)(2).   Rule 17 subpoenas are "not intended to provide a means of discovery for criminal cases."   *United States v. Nixon*, 418 U.S. 683, 698 (1974).   Instead, they are intended "to expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials."   *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951).   The party seeking the materials must show (1) relevancy, (2) admissibility, and (3) specificity.   *Nixon*, 418 U.S. at 698.   More specifically, the party must show the following:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such an inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*United States v. Abdush-Shakur*, 465 F.3d 458, 467 (10th Cir. 2006) (quoting *Bowman Dairy Co.*, 341 U.S. at 221, and *Nixon*, 418 U.S. at 699-700).

## III.   ANALYSIS

Here, the record establishes that compliance with Item Nos. 1 and 2 of the subpoena would be unreasonable and oppressive.   Jones's attempt to downplay the unreasonable and oppressive nature of these requests (ECF 23, at 2-3) is unpersuasive.   Item No. 1 seeks all police reports of traffic stops conducted by Officer Matthew DeLoux.   The City explains that "Officer DeLoux

3

conducted 2,223 traffic stops, wrote 598 citations, and 1,055 reports during the term of his employment with the City." (ECF 22, at 2.) And Item No. 2 seeks "[a]ny and all run sheets, incident reports, or dispatch records of traffic stops conducted by Officer [] DeLoux." The City explains that "Officer DeLoux is associated with 3,573 calls over the term of his employment in the Johnson County Computer Aided Dispatch ('CAD') system" and that the City cannot produce anything more than a summary list of these calls (*e.g.*, if Jones wants call notes) unless the City separately pulls up each of the 3,573 call numbers, searches for related data, and prints any stored information. (*Id.*)

Given this explanation, the court finds Item Nos. 1 and 2 are unreasonable and oppressive. Indeed, these categories appear particularly abusive when viewed in addition to the categories of documents the City has already produced or agreed to produce in response to the other categories (Item Nos. 3-11) listed in the subpoena. These categories include complaints about DeLoux, including discrimination or harassment toward other officers, and all related investigations; his disciplinary and Internal Affairs records; records of criminal investigations regarding DeLoux forwarded to the Kansas City Missouri Police Department; records of legal settlements involving DeLoux; DeLoux's training records regarding biased-based policing, traffic stops, and vehicle searches; the Lenexa Police Department's policies regarding the same; and the GPS coordinates for DeLoux's vehicle during the two-hour window in question. (ECF 14, at 2.) These categories of documents appear targeted to obtain documents showing that DeLoux has a propensity to engage in biased-based policing.

But the court cannot say the same thing about the "catch-all" Item Nos. 1 and 2. These seek all police reports of traffic stops conducted by DeLoux as well as all run sheets, incident

4

reports, or dispatch records of traffic stops conducted by him—all during his entire time of employment with the Lenexa Police Department.   As the City explains:

> Item Nos. 1 and 2 . . . effectively attempt to compel the City to produce every document ever generated by or associated with Officer DeLoux – **without any limitation, connection, or standard for relevance**.   Defendant **does not seek specific, identifiable evidence** for use at trial.   Instead, he issued discovery requests that seek entire categories of documents over an entire career. . . . **It is hard to imagine a clearer example of counsel going on a fishing expedition.**   This is not allowed.

(ECF 22, at 3 (emphasis added).)   The court agrees, and could not have said it better.   These broad categories impermissibly seek to use a Rule 17 subpoena as a broad-ranging discovery tool rather than to secure specific evidence in advance of trial so as to streamline the presentation of evidence.   These categories are akin to a fishing expedition that is prohibited under *Nixon*'s specificity standard.   *Nixon*, 418 U.S. at 699-700.

In response, Jones argues the court already determined that Item Nos. 1 and 2 seek relevant, admissible, and specific material because the court ordered the Rule 17 subpoenas in the first place. But the court's authorization of a Rule 17 subpoena based on a threshold showing of relevance, admissibility, and specificity does not foreclose a subpoena recipient from challenging the subpoena for failing to comply with the *Nixon* standard.   *See United States v. Beckford*, 964 F. Supp. 1010, 1028 (E.D. Va. 1997) ("Where the subpoenaed party brings a motion to quash or modify, the court must reconsider the *Nixon* standard in determining whether compliance with the subpoena would be unreasonable or oppressive." (quotations omitted).)   "The *Nixon* factors would be useless if a challenge could not be made on the basis that the subpoena was issued without a proper showing having been made."   *United States v. Lansing*, No. 2:08-CR-558, 2009 WL 321575, at *1 (D. Utah Feb. 9, 2009).   Consequently, courts in the Tenth Circuit have frequently

5

applied the *Nixon* standard to a third party's motion to quash a Rule 17 subpoena.  *See generally, e.g.*, *United States v. Keogh*, Case No. CR-17-290-D, 2022 WL 566791, at *1 (W.D. Okla. Feb. 24, 2022) (applying *Nixon* standard to motion to quash Rule 17 subpoenas); *United States v. Pistotnik*, Case No. 18-10099, 2019 WL 568583, at *1 (D. Kan. Feb. 12, 2019) (same); *Lansing*, 2009 WL 321575, at *1 (same).

Alternatively, Jones requests a hearing if the court is inclined to revisit the *Nixon* standard. (ECF 23, at 6.)   But Jones already had two opportunities to persuade the court that the scope of the subpoena is proper: first, on the motion seeking the subpoena, and, second, in response to the City's motion to partially quash the subpoena.   At this point, Jones has had ample opportunity to support the propriety of the subpoena and offers no reason as to why a hearing is necessary.

**IT IS THEREFORE ORDERED** that Non-Party City of Lenexa's Motion to Partially Quash Subpoena (ECF 22) is granted.

**IT IS FURTHER ORDERED** that the Clerk is directed to serve a copy of this order on counsel of record for the City of Lenexa.

**IT IS SO ORDERED.**

Dated August 12, 2022, at Kansas City, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge
