**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

UNITED STATES OF AMERICA,

        Plaintiff,

v.

MAURICE T. JONES,

        Defendant.

**FILED UNDER SEAL**

Case No. 21-20055-HLT

**MEMORANDUM AND ORDER**

The indictment in this case charges defendant Maurice T. Jones ("Jones") with (Count 1) Possession With Intent to Distribute Cocaine; (Count 2) Use, Carry & Possess a Firearm in Furtherance of a Drug Trafficking Crime; and (Count 3) Felon in Possession of a Firearm and Ammunition.   (ECF 1.)   These charges arose from a traffic stop by the Lenexa Police Department of the vehicle Jones was driving.   This matter is now before the court on Jones's Ex Parte Motion for Production of Documents and Objects pursuant to Federal Rule of Criminal Procedure 17(c). (ECF 30.)   By way of this motion, Jones asks the court to authorize issuance of a subpoena to the Lenexa Police Department for police reports, citations, or other records of traffic stops conducted by the law enforcement officer who initiated the traffic stop, then-Lenexa Police Officer Matthew DeLoux ("DeLoux").   The court previously granted non-party City of Lenexa's (the "City") partial motion to quash portions of a prior subpoena that encompassed this same information. (ECF 26.)   The court therefore construes the current motion as a motion to reconsider the court's prior order and denies the motion for the reasons explained below.

I.      **BACKGROUND**

Jones's briefing submitted in connection with the prior subpoena and the current motion

explains that DeLoux pulled Jones over near West 77th Terrace and Quivira Road in Lenexa,

Kansas, at 2:07 a.m. on November 17, 2017.    Dash camera footage shows that DeLoux's vehicle

was traveling north on Quivira Road and accelerated from 37 to 48 miles per hour to catch up to

Jones's vehicle as it turned left from Quivira onto West 77th Terrace.    (ECF 11, at 3.)    DeLoux

then followed Jones into an apartment parking lot, where DeLoux switched on the vehicle's

emergency lights.    (*Id.*)    DeLoux told Jones he pulled him over because Jones had a cover over

his license plate.    (ECF 30, at 3-4.)    After dispatch told DeLoux that Jones had warrants, DeLoux

placed Jones under arrest, in handcuffs, in the back seat of DeLoux's patrol vehicle.    (*Id.* at 2-3.)

DeLoux claimed he smelled marijuana, so he and another officer searched Jones's vehicle.    (*Id.*

at 4.)    They found marijuana on the floorboard, as well as a firearm, a clip, two baggies containing

a white substance, and a box of sandwich bags.    (*Id.*)

Jones contends that the only way the presence of a clear license plate cover would violate

a Lenexa ordinance is if it made the plate unreadable from 50 feet away, but the dash camera

footage showed that DeLoux was not within 50 feet of the vehicle until he followed Jones onto

West 77th Terrace—*i.e.*, *after* DeLoux accelerated to catch up with Jones's vehicle.    (*Id.* at 3-4.)

DeLoux is Caucasian and Jones is African American.    Jones therefore contends that DeLoux's

"selective enforcement" of the license plate cover ordinance against Jones constituted a violation

of the Equal Protection Clause, and the subsequent entry into and search of Jones's vehicle was

unjustified.    (*Id.* at 4.)

In May, Jones filed two motions pursuant to Federal Rule of Criminal Procedure 17(b) and

(c) asking the court to authorize subpoenas to the City of Lenexa and the Lenexa Police

Department. (ECF 10-11.) The court granted those motions and authorized issuance of the subpoenas. The subpoena to the City of Lenexa sought traffic-camera footage of the area from 1:00 a.m. to 3:00 a.m. on the morning in question. (ECF 13.) The subpoena to the Lenexa Police Department sought eleven categories of documents generally relating to biased-based policing by DeLoux. (ECF 14.) The City did not lodge any formal objections to the subpoena seeking the traffic-camera footage or to Item Nos. 3-11 of the subpoena to the Lenexa Police Department seeking documents relating to alleged bias-based policing. However, the City asked Jones to narrow the following two categories:

> 1. Any and all police reports of traffic stops conducted by Officer Matthew DeLoux, badge number 1401, during his entire time of employment.
> 2. Any and all run sheets, incident reports, or dispatch records of traffic stops conducted by Officer Matthew DeLoux, badge number 1401, during his entire time of employment.

(ECF 22-1, at 3.) Jones refused to narrow these categories, so the City moved to partially quash the subpoena as to these categories. (ECF 22.) The court granted the motion by way of an order dated August 12. The court found these two categories were unreasonable and oppressive, particularly when viewed in addition to the categories of documents the City already produced or agreed to produce. (ECF 26.)

In the current motion, Jones now asks the court to authorize issuance of another subpoena to the Lenexa Police Department to produce the following information:

> 1. Any and all police reports, citations, or other records of traffic stops conducted by Officer Matthew DeLoux, badge number 1401, within the City of Lenexa during his duty as a patrol officer, from March 2016 to March 2018.

(ECF 30, at 1-2.) Jones says that, since the court's August 12 order granting the City's motion to quash, counsel contacted the Lenexa Police Department to suggest narrowing the timeframe of the

3

request to encompass March 2016 to March 2018, but that the City's counsel declined that offer. (*Id.* at 9-10.)

## II.   <u>JONES'S MOTION IS DENIED AS AN UNTIMELY MOTION TO RECONSIDER</u>

As a threshold matter, Jones's current motion is denied as untimely.   The motion is not explicitly styled as a motion to reconsider.   But the court looks beyond the form of the motion to the substance of the relief sought.   The court already granted the City's motion to quash subpoena categories that encompassed the same information Jones now seeks.   (ECF 30, a 9 (characterizing the prior subpoena as "requiring the Lenexa Police Department to provide the above-requested information and a great deal more").)   If the court were to grant the current motion, it would effectively reverse the relief the court previously granted to the Lenexa Police Department.   The motion is therefore properly characterized as a motion to reconsider.

Motions to reconsider are proper in criminal cases even though the Federal Rules of Criminal Procedure do not expressly provide for them.   *United States v. Christy*, 739 F.3d 534, 539 (10th Cir. 2014).   This court's Local Rule 7.3(b) governs motions to reconsider non-dispositive orders, and it requires such motions to be filed "within 14 days after the order is filed unless the court extends the time."   D. KAN. L.R. 7.3(b).

The court's order quashing the two categories from the prior subpoena was filed on August 12.   (ECF 26.)   Any motion to compel was therefore due within 14 days thereafter, or by August 26.   Jones did not file the current motion until nearly a month later, on September 21.   Jones's motion is therefore untimely under this court's local rules, and it is denied on that basis alone. *See, e.g.*, *United States v. McDonald*, No. 16-10033-JTM, 2014 WL 5489448, at *4 (D. Kan. Oct. 29, 2014) (motion to reconsider filed more than 14 days after the underlying order "failed procedurally"); *United States v. Sotelo-Lopez*, No. 12-40013-01-RDR, 2012 WL 2993651, at *2

(D. Kan. July 20, 2022) (denying motion to reconsider filed past the 14-day deadline in Rule 7.3(b) as untimely)

### III.    JONES'S ARGUMENTS DO NOT WARRANT RECONSIDERATION

His motion is also denied on the merits.  The court may grant a motion to reconsider "where the court has misapprehended the facts, a party's position, or the controlling law." *Christy*, 739 F.3d at 539.   Specific grounds include: "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice."  *Id.* (quotation omitted); *accord* D. KAN. L.R. 7.3(b).   A motion to reconsider "should not be used to revisit issues already addressed or advance arguments that could have been raised earlier."  *Christy*, 739 F.3d at 539.

Here, the court categorizes the arguments raised in Jones's current motion as raising essentially three possible grounds for reconsideration.

### A.    The Narrowed Timeframe of the Subpoena Is an Impermissible Attempt to Revisit an Issue That Jones Could Have Raised Earlier

The first aspect of the current motion that differs from the categories at issue in the prior subpoena is the narrowed timeframe.   Jones explains that narrowing the timeframe for the records request to encompass March 2016 to March 2018 would "cut the time covered by over half." (ECF 30, at 9-10.)   However, Jones was previously given the opportunity to narrow the request and refused to do so.   The City's motion to partially quash the prior subpoena explained that the City had asked Jones to narrow the subpoena categories, but that Jones's counsel refused.   (ECF 22, at 2 ("defense counsel is unwilling to narrow the requests in any way").)   Jones's response not only confirmed this, but went on to admit that Jones's counsel "seriously considered" narrowing the subpoena and explained why he decided not to do so.  (ECF 23, at 4-5.)   The court's prior order recognized this.  (ECF 26, at 3.)   It was only after Jones lost on the broad scope of these

subpoena categories that he attempted a redo.   But the time for Jones to compromise on the scope

of these categories was before the court previously decided the issue, not after.   "A motion to

reconsider is not a second opportunity for the losing party to make its strongest case, to rehash

arguments or to dress up arguments that previously failed."   *United States v. Huff*, 782 F.3d 1221,

1224 (10th Cir. 2015) (quotation omitted).   Accordingly, the narrowed timeframe does not present

a valid ground for reconsideration of the court's prior order.

      **B.**      **The Additional Information Jones Has Now Submitted Is Not New Evidence That Was Previously Unavailable to Him**

The next aspect of the current motion that differs from Jones's prior briefing is the

additional information he has now submitted that might present grounds for reconsideration if it

truly constituted "new evidence" that was previously unavailable to him.   For example, he now

cites statistics to support his argument that "policing in Lenexa [has] a discriminatory effect on

people of color – including Mr. Jones."   (ECF 30, at 7.)   He also submitted an "Expert Affidavit"

from University of Kansas Professor Charles Epp explaining that law enforcement "officers in the

Kansas City Metropolitan Area tend to target minority drivers" by initiating "discretionary stops"

like the license plate cover violation at issue, which Jones contends "supports the legal conclusion

that such a stop of a black, male driver is the result of a discriminatory purpose."   (*Id.* at 7-8.)

But this additional material is insufficient to warrant reconsideration of the court's prior order

because the only inference that can be drawn from the record is that Jones could have presented

this information during the prior round of briefing.

    For example, Jones cites information about the City of Lenexa's racial composition from

the United States Census Bureau.   But this information was reported from the 2020 census as of

July 1, 2021, which was more than a year ago and well before the prior round of briefing.   Jones

also cites information from the FBI's Crime Data Explorer that reflects crime data the Lenexa

Police Department reported through the Uniform Crime Reporting Program.  But, again, Jones cites information reported for 2020, which was well before Jones's prior briefing.  Likewise, Jones has not established that the information from Epp constitutes new evidence that was previously unavailable.  The date of the "Affidavit" is unclear because it is not signed or dated. But even if Jones obtained Epp's affidavit since the prior round of briefing, there is no reason why he could not have marshaled this evidence sooner.  Epp explains that he and his colleagues conducted research and authored a book that explores the information set forth in his affidavit.  In support, Epp cites transcripts from Kansas-City-area focus groups from 2011 that were summarized and reported in a 2014 book that he co-authored called *Pulled Over: How Police Stops Define Race and Citizenship*.  All of this is readily available on the internet and Epp works at the nearby University of Kansas that is only a short drive from the courthouse in Kansas City, Kansas. So Jones could have presented all of this information during the prior round of briefing.

In sum, there is nothing in the record from which the court could find that reconsideration is warranted on the ground that the additional information Jones submitted in support of his current motion constitutes new evidence that was previously unavailable to him.

> **C.**      **Reconsideration is Not Warranted to Correct Clear Error or Prevent Manifest Injustice**

Lastly, the court turns to the global theme of Jones's motion, which is essentially to the effect that the court should authorize the requested discovery so that he can pursue evidence of DeLoux's alleged discriminatory intent in initiating the traffic stop—all of which goes to the issue of whether reconsideration is warranted to correct clear error or prevent manifest injustice.  It is not.  Even if the court looks past the untimeliness of the current motion, considers the narrowed timeframe of the current subpoena (compared to the prior subpoena), and also takes into

consideration the additional information Jones has belatedly submitted, he still is not entitled to the requested discovery.

Jones is seeking information about DeLoux's traffic stops in the two years leading up to the incident in question so that he can pursue a selective enforcement claim.   Such a claim requires proof of both (1) discriminatory effect and (2) that the law enforcement officers involved were motivated by a discriminatory purpose.   *United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1264 (10th Cir. 2006).   The Tenth Circuit specifically addressed the standard for discovery on a selective enforcement defense in *Alcaraz-Arellano*.   Defendants must produce "some evidence" of both discriminatory effect and discriminatory intent.   441 F.3d at 1264.   In that case, the defendant attempted "to prove intent through statistical evidence of discriminatory effect."   *Id.* Specifically, the defendant relied on the "'sheer disparity' between the percentage of Hispanics on the road and the percentage of Hispanics stopped" to show that "Deputy Schneider targets them." *Id.*   But the court held the defendant did not satisfy the discriminatory-intent prong for obtaining discovery because Deputy Schneider made the decision to stop the defendant before knowing his ethnicity.   *Id.*; *see also, e.g.*, *United States v. Hare*, 308 F. Supp. 2d 955, 963-65 (D. Neb. 2004) (holding magistrate judge erred by authorizing discovery based on "extremely weak and indirect statistical evidence of discriminatory enforcement" that did not make out a threshold showing of discriminatory effect or intent); *cf. United States v. Dixon*, 486 F. Supp. 2d 40, 43-46 (D.D.C. 2007) (denying ex parte motion to issue Rule 17(c) subpoena in pursuit of selective enforcement claim where subpoena did not seek evidence that would have shown discriminatory purpose under *Alcaraz-Arellano*).

Jones is making a similar argument in this case.   He relies on statistics to show discriminatory effect—namely, that policing in Lenexa has a discriminatory effect on people of

color and that Kansas City-area officers are more likely to initiate discretionary investigatory traffic stops of black drivers than white drivers.   But none of these statistics are specific to Officer DeLoux's intent.   Instead, Jones seeks the requested discovery because he "*suspect[s]* Officer DeLoux's practice will be consistent with the more general information" and therefore he seeks to review "Officer DeLoux's traffic stops to establish a discriminatory purpose."   (ECF 30, at 8, 11 (emphasis added).)   In other words, Jones has no evidence of discriminatory intent other than what he asks the court to infer from the statistical evidence he submitted in support of the discriminatory effect prong.   This falls short of the "some evidence" of discriminatory intent that *Alcaraz-Arellano* requires in order to be entitled to discovery.

One additional similarity between *Alcaraz-Arellano* is noteworthy.   In *Alcaraz-Arellano*, the court had already found that Deputy Schneider made the decision to stop the defendant before knowing his ethnicity.   *Id.*   This case arises at a different procedural juncture where the court has not yet made such a finding.   But Jones has the burden of showing he is entitled to the requested discovery and he has not presented any evidence from which the court could find that DeLoux even knew Jones's race when he decided to initiate the traffic stop.   The only inference that can be drawn from the record is that he did not know the driver's race.   Jones's contention that the traffic stop was illegal is that DeLoux was not able to determine whether the license plate was unreadable within 50 feet of the vehicle (and thus violate a Lenexa ordinance) until DeLoux had already accelerated to catch up with Jones's vehicle and followed him onto West 77th Terrace. Until then, if DeLoux was not close enough to determine whether the license plate was unreadable, it cannot reasonably be inferred that he was close enough to determine the driver's race, especially where DeLoux had been following the vehicle in the dark at 2:07 a.m. in the morning.   Tellingly, Jones has the dash camera footage from DeLoux's vehicle and the traffic camera footage from the

City of Lenexa, and yet he presented none of that footage to establish that DeLoux knew Jones's race before he initiated the traffic stop.

Jones's failure to cite any evidence of DeLoux's discriminatory motive is particularly astounding at this procedural juncture given the breadth of information Jones already subpoenaed from the Lenexa Police Department.   This includes documents relating to any complaints about DeLoux during his entire time of employment, including related investigations; complaints that DeLoux engaged in discrimination and harassment toward other officers during his entire time of employment, including related investigations; his complete disciplinary records during his entire time of employment; his complete Internal Affairs record during the entire time of his employment; any and all records of criminal investigations, including notifications of investigations, regarding DeLoux forwarded to the Kansas City Missouri Police Department; DeLoux's training records concerning bias-based policing, traffic stops, and vehicle searches; the GPS coordinates of his patrol vehicle from 1:00 a.m. to 3:00 a.m. on the morning in question; and Lenexa Police Department policies regarding bias-based policing, traffic stops, and vehicle searches.   (ECF 14, at 2.)   Furthermore, the court authorized the issuance of similar subpoenas (at Jones's request) to the Kansas City Missouri Police Department, where DeLoux has worked since 2018.   (ECF 18-19.)

Despite all of this discovery and now a third round of briefing, Jones still cannot point to any evidence that DeLoux initiated the traffic stop because of Jones's race.   He relies only on weak evidence of discriminatory effect from which he asks the court to infer discriminatory intent, which is insufficient to be entitled to discovery under *Alcaraz-Arellano*.   The current motion therefore reinforces the court's prior conclusion that Jones is pursuing the subject discovery as an impermissible fishing expedition.   (ECF 22, at 3 ("It is hard to imagine a clearer example of

counsel going on a fishing expedition.").)   Reconsideration is therefore denied.   The court has

not misapprehended the facts, Jones's position, or the controlling law.

## IV.    <u>ORDER TO UNSEAL</u>

Lastly, the court does not see any reason why Jones filed the current motion *ex parte*.   The

City already filed its prior motion to quash in the public record, and Jones filed his response in the

public record (ECF 22, 23), so disputes concerning this discovery are already a matter of public

record.   The court will nevertheless issue this order under seal purely as a matter of courtesy to

Jones's counsel and out of an abundance of caution that there may be some legitimate reason why

it should remain under seal.   But the court is inclined to unseal this order because the issues

presented raise matters of public interest for litigants who may encounter similar discovery issues.

The court will therefore direct the clerk's office to unseal this order unless Jones moves no later

than **October 7, 2022**, to have this order maintained under seal and makes the showing required

by law as to why this order should remain under seal.

**IT IS THEREFORE ORDERED** that Jones's Motion for Production of Documents and

Objects (ECF 30) is denied.

**IT IS FURTHER ORDERED** that the Clerk is directed to serve a copy of this order on

counsel of record for the City of Lenexa.

**IT IS FURTHER ORDERED** that this order shall remain sealed until **October 10, 2022**,

at which time the court will direct the clerk's office to unseal the order unless Jones moves in

advance of that date to have this order maintained under seal and the court grants that motion.

**IT IS SO ORDERED.**

Dated September 30, 2022, at Kansas City, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge
